UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANNY JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-00975-JRS-MPB ) |
| RYAN COCHRAN, MATTHEW VANDINE, | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING FINAL JUDGMENT**

Plaintiff Danny Johnson, an Indiana Department of Correction (IDOC) inmate, seeks relief under 42 U.S.C. § 1983 alleging that defendants Lt. Vandine and Officer Cochran subjected him to excessive force in violation of his Eighth Amendment rights in an incident that occurred at Pendleton Correctional Facility (PCF) on September 21, 2020. Dkt. 2.

The defendants seek summary judgment on the basis that Mr. Johnson failed to exhaust his administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Mr. Johnson filed his *pro se* response in opposition and the defendants filed their reply. *See* dkts. 33 and 34. On April 13, 2022, Mr. Johnson retained counsel on his own, and the Court permitted counsel time to file a supplement to Mr. Johnson's *pro se* response in opposition. Dkts. 35 and 39. Plaintiff's counsel filed his supplement, and the defendants filed their final reply. Dkts. 41 and 45. This motion is now fully briefed and ripe for the Court's resolution.

For the reasons explained below, the Court **GRANTS** the defendants' motion for summary judgment, dkt. [29], and **this action is dismissed without prejudice**.

## I. Case Background

This action is limited to allegations that occurred on September 21, 2020. Dkt. 18 at 2 (Court's Screening Entry). Specifically, Mr. Johnson alleges that on this date, Officer Cochran saw Mr. Johnson out of his cell and dispatched Lt. Vandine to "strip cell" him. *Id.* When Lt. Vandine arrived, he slammed Mr. Johnson into a metal crate and used joint lock manipulation on him despite Mr. Johnson complying with orders to submit to mechanical restraints. *Id.* at 2. Mr. Johnson's Eighth Amendment excessive force claims proceed against Officer Cochran and Lt. Vandine. *Id.* at 3.

In its screening, the Court identified several misjoined claims, including claims related to allegations about another incident of excessive force that occurred in October 2020 in connection with a cell extraction. Dkt. 25 (Order granting plaintiff's motion to separate cases). Mr. Johnson's claims related to the October 2020 incident proceed in a separate action before this Court against other defendants not named in this action. *Id.*

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

### III. Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**A. Offender Grievance Process**

At all times relevant to his complaint, Mr. Johnson was incarcerated at Pendleton Correctional Facility (PCF), an IDOC facility. Dkt. 2. As required by IDOC policy, an offender grievance program is in place at PCF. Dkt. 29-1, ¶ 5 (Conyers Aff.). IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process (OGP), effective September 1, 2020, sets forth the steps through which inmates committed to the IDOC "may resolve concerns and complaints relating to their conditions of confinement." Dkt. 29-2 at 1. The OGP is the only grievance process recognized by the IDOC. Dkt. 29-1, ¶ 9.

Inmates must take the following steps to complete the OGP, after first being encouraged to resolve the issue informally: (1) the inmate shall submit a completed State Form 45471 to file a formal "offender grievance" within 10 business days of the incident; (2) if the formal grievance is not resolved to the inmate's satisfaction, the inmate may file a completed State Form 45473 Level 1 "grievance appeal" and submit it to the Offender Grievance Specialist within 5 business days after the date of the grievance response (or if the inmate does not receive a response to the grievance within the applicable timeframe, it may be appealed as if it had been denied); and (3) if after receipt

of the appeal response, the offender is dissatisfied or no response is timely received, the offender may appeal to the Department Offender Grievance Manager. Dkt. 29-2 at 3, 9-13.

If the offender seeks to appeal the Warden/designee's appeal response, "the offender shall check the 'Disagree' box, sign, and submit the completed State Form 45473 'Offender Grievance Appeal,' and any additional, pertinent documentation to the Offender Grievance Specialist" within 5 business days of the Warden/designee's appeal response. *Id.* at 13. This is a Level 2 "grievance appeal." The Offender Grievance Specialist "shall scan and enter the completed State Form 45473 and any additional pertinent documents" into the grievance database. *Id.*

Inmates are informed of the OGP during Offender Admission and Orientation. Dkt. 29-1, ¶ 24. Staff ensure that inmates are notified of the OGP and are aware of how to obtain copies of the process. Dkt. 29-2 at 7. Inmates receive access to copies of the process in the Department's Offender Handbook, which includes a section on the OGP. *Id.* Copies of the OGP are also available in the law library. Dkt. 29-1, ¶ 25.

## B. Mr. Johnson's Use of the OGP

The IDOC "keeps records on every accepted formal grievance and formal appeal filed by an offender." *Id.*, ¶ 28. Mr. Johnson's history of grievances is in the record, dkt. 29-3, and shows that he submitted three (3) grievances related to the use of force incident on September 21, 2020, between September and October 2020. Dkt. 29-1, ¶ 29. These grievances were logged as case numbers 118768, 118808, and 119472. *Id.*, ¶ 30.

Grievance 118768 was filed on September 30, 2020, received on October 5, 2020, and responded to on October 15, 2020. Dkt. 29-4. Grievance 118808 was filed on October 5, 2020, received on October 6, 2020, and responded to on October 15, 2020. Dkt. 29-5. Grievance 119472 was filed on October 13, 2020, received on October 26, 2020, and responded to on November 5,

4

2020. Dkt. 29-6. The responses to Mr. Johnson's grievances indicated that the grievances were denied because he refused multiple orders during the incident and physically resisted. Dkt. 29-4. Mr. Johnson's grievance history does not show that he filed an appeal for any of these formal grievances. Dkt. 29-3.

## IV. Discussion

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

5

As the movant, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Johnson. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

The defendants argue that all three formal grievances related to the September 21, 2020, incident were reviewed, denied, and returned to Mr. Johnson, but he failed to complete the second step in the OGP process by pursuing a first level appeal for any of these grievance attempts. Dkt. 30 at 6. The Court agrees.

Mr. Johnson's *pro se* response in opposition does little to refute that he failed to exhaust his remedies. Dkt. 33. He claims he filed formal grievances through a writ writer but was forced to move away from that writ writer, contends he sent a letter to the Warden about the excessive force incident, claims he filed grievance appeals, and claims he filed numerous grievances against the grievance specialist with no responses. *Id.* He references another pending case before this Court in support of his arguments, *Johnson v. Hill et al.*[1] Mr. Johnson's *pro se* response designates no evidence that would allow a reasonable jury to conclude that he filed grievance appeals. The

---

[1] The Court notes that *Johnson v. Hill et al.*, no 1:21-cv-03107-JRS-MPB was dismissed on July 29, 2022, because no amended complaint was filed, at dkts. 29 and 30. The claims in that action are unrelated to the September 21, 2020, incident that is the subject of the case at bar and were severed. To the extent that Mr. Johnson draws the Court's attention to exhibits filed in that action, those would be the same exhibits attached to his complaint in this action.

exhibits attached to Mr. Johnson's complaint, dkt. 2-1, indicate that he filed additional formal grievances about the September 21, 2020 incident in 2021, *well beyond* the OGP requirement that a formal grievance must be filed within 10 business days from the date of the incident. And Mr. Johnson acknowledges that these attempts were late "due to being moved from offenders who assisted [him] in filing grievances" because he did "not know how to do them and the procedures." *Id.* These 2021 grievance attempts were properly rejected as untimely.[2] *Id.* at 7-8 (Conyers' responses to 2021 grievance attempts). Indeed, Mr. Johnson had also been notified in response to his third grievance, 119472, filed on October 13, 2020, that this grievance was out of time frame for this issue. Dkt. 29-6 at 1. In sum, the Court finds that Mr. Johnson's *pro se* arguments are unavailing. His three formal grievances, filed in September and early October 2020, were each reviewed on their merits and denied.

Each response indicated that should Mr. Johnson need "additional instructions and/or information regarding grievances," he should "refer to policy 00-02-301." *Id.* He designates no evidence that he submitted any appeal.

The supplemental response filed by plaintiff's counsel on May 23, 2022, fares no better. Dkt. 41. Here, the response states quite incorrectly that the incident took place on October 23, 2020, over a month after the allegations that proceed in this action. *Id.* The supplemental response includes a return of grievance form indicating that a grievance was submitted October 23, 2020, was received on November 2, 2020, and was returned four days later because the incident was "under investigation" and the grievance could not be answered. Dkt. 41-1. Plaintiff's counsel raises

---

[2] Ms. Conyers wrote a letter to Mr. Johnson on April 1, 2021: "You have been advised about these grievances already. I had advised you in the returned grievances on why they where being returned. I will no longer accept grievances from you over these issues and from here on out they will just be returned and not addressed. These[ ] grievances are out of time frames or have been already logged and addressed." Dkt. 2-1 at 8.

7

new argument that Mr. Johnson's remedies were unavailable to him because when an incident is under review and no response can be given, no further effort should be required to exhaust the issue. Dkt. 41. Defendants argue that this supplemental response does not create a genuine issue of material fact because it "misstates the date of the incident, and provid[es] a return of grievance form on an unclear issue well after Plaintiff's previous three formal grievances[.]" Dkt. 45 at 1.

Defendants' argument is well taken. The return of grievance form that forms the basis of counsel's argument, dkt. 41-1, fails to include the actual grievance to which it corresponds. As such, the return of grievance form would not allow a reasonable jury to conclude that the OGP was unavailable to Mr. Johnson *with respect to the September 21, 2020, incident* or that the facility somehow improperly rejected his grievances *with respect to the events of that date*. And even if the grievance itself related to the September 21, 2020, incident, it was filed on October 23, 2020, making it untimely. Further, as defendants persuasively argue, even if this return of grievance form is related to the claims in this action, it does not explain or relieve Mr. Johnson's failures to appeal any of the three prior formal grievances that were reviewed on their merits and denied with instructions for him to refer to the OGP if he had additional questions about these grievances.

Mr. Johnson has failed to establish that there is any genuine dispute of material fact regarding exhaustion of his administrative remedies, in either his *pro se* response or his supplemental response filed by counsel. Rather, the record shows that Mr. Johnson had multiple chances to appeal his formal grievances filed in September and early October 2020 but did not take those opportunities in compliance with the OGP.

Accordingly, the consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that the action should not have been brought and must now be dismissed without prejudice. *Ford*, 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## V. Conclusion

For the reasons explained above, the defendants' motion for summary judgment, dkt. [29], is **GRANTED**, and this action is **dismissed without prejudice**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 09/21/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Paul Stanton Petro
paul@petrolaw.us

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov